# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Second Lieutenant NICOLE A. DALMAZZI
### United States Air Force

## ACM 38808

## 12 May 2016

Sentence adjudged 21 January 2015 by GCM convened at Malmstrom Air Force Base, Montana.  Military Judge:  L. Martin Powell (sitting alone).

Approved Sentence:  Dismissal and confinement for 1 month.

Appellate Counsel for Appellant:  Major Thomas A. Smith.

Appellate Counsel for the United States:  Lieutenant Colonel Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

MITCHELL, DUBRISKE, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

DUBRISKE, Judge:

Appellant, in accordance with her plea, was found guilty of wrongfully using ecstasy, a Schedule I controlled substance, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.  A second charge and specification, alleging Appellant obstructed the investigation into her drug use by repeatedly dyeing her hair in an effort to avoid forensic detection, was dismissed after acceptance of her plea pursuant to a pretrial agreement.

Appellant was sentenced by a military judge sitting alone to a dismissal and one month of confinement.  The general court-martial convening authority approved the sentence as adjudged.

On appeal, Appellant raises two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). First, Appellant alleges the military judge erred in not dismissing the charges against her due to unlawful command influence. Second, Appellant argues her sentence is inappropriately severe. Finding no error, we affirm the findings and sentence.

*Background*

In January 2014, the Air Force Office of Special Investigations (AFOSI) opened drug investigations against a small number of commissioned officers, including Appellant, who were stationed at six different Air Force installations. AFOSI investigators, during the course of analyzing cell phones seized during these investigations, also discovered some of these same officers had improperly disclosed proficiency testing materials for officers operating intercontinental ballistic missile systems.

The subsequent command-directed investigation of the test compromise allegations identified almost 100 potential suspects, including Appellant. The test compromise investigation drew significant media attention, and resulted in press conferences and statements from senior leaders within both the Department of Defense and the Department of the Air Force. These statements and press conferences were almost exclusively focused on the test compromise investigation and, eventually, the disciplinary results and corrective actions stemming from the investigation. While the original drug investigations were mentioned during some senior leader statements as the reason the test compromise allegations were discovered, only generic details about the actual investigations were ever released. One senior leader, when specifically asked about the drug allegations, declined to discuss any details as the criminal investigations were ongoing.

Disciplinary action on the test compromise allegations was eventually handled by the numbered air force commander with authority over the involved officers. There was insufficient evidence to support disciplinary action against Appellant for compromising proficiency testing materials.

Appellant was eventually charged with using ecstasy on "divers" occasions and impeding the AFOSI investigation against her. After charges against her were referred to general court-marital, the basic details regarding her trial proceedings were released to the public.

*Unlawful Command Influence*

On appeal, Appellant claims the military judge erred in denying her motion to dismiss all charges due to unlawful command influence. Appellant, adopting her arguments at trial, primarily alleges the disciplinary fallout from the much publicized test compromise investigation, which resulted in Appellant's chain of command being relieved

of their leadership positions, pressured Appellant's current chain of command to bring criminal charges against her due to fear they would likewise lose their command positions if they failed to hold Appellant accountable.

Article 37(a), UCMJ, 10 U.S.C. § 837(a), states: "No person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial . . . or any member thereof, in reaching the findings or sentence in any case . . . ." The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)).

We review allegations of unlawful command influence de novo. *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013). "On appeal, the accused bears the initial burden of raising unlawful command influence. Appellant must show: (1) facts, which if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness." *Id.* (citing *United States v. Richter*, 51 M.J. 213, 224 (C.A.A.F. 1999)). The initial burden of showing potential unlawful command influence is low, but is more than mere allegation or speculation. *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002). Appellant must initially present "some evidence" of unlawful command influence. *Id.* (quoting *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999)).

After an issue of unlawful command influence is raised by some evidence, the burden shifts to the Government to rebut an allegation by persuading the court beyond a reasonable doubt that: (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence will not affect the findings or sentence. *Biagase*, 50 M.J. at 151. "Where, as here, the issue is litigated on the record at trial, the military judge's findings of fact are reviewed under a clearly erroneous standard, but the question of command influence flowing from those facts is a question of law that this court reviews de novo." *United States v. Jeter*, 74 M.J. 772, 778 (A.F. Ct. Crim App. 2015), *pet. rev. denied*, 75 M.J. 63 (C.A.A.F. 2015).

As an initial matter, we adopt the military judge's findings of fact as they are supported by the record. Upon our independent review of the question of law, we likewise find Appellant failed to meet her initial burden of showing the pretrial publicity and disciplinary response for the test compromise investigation constituted actual or apparent unlawful command influence as it related to the charges in her case. The record clearly establishes the senior leader and command involvement cited by Appellant was focused almost exclusively on matters unrelated to Appellant's case. As such, the argument her command's decision to move forward on drug charges was somehow influenced by a fear of being relieved of command is speculative at best. In so holding, we would note the decision to court-martial a commissioned officer accused of repeatedly using illegal

narcotics, instead of imposing some form of administrative action, is not an anomaly within the military justice system.

Moreover, as noted by the military judge, Appellant's theory that her chain of command was unduly concerned about the consequences of disciplinary inaction was rebuffed by the fact that action was not taken against her for compromising testing materials. Commanders fearful they would meet the same fate as their predecessors should have driven them to hold Appellant accountable for all possible disciplinary violations. Appellant's speculative claim is therefore insufficient in our opinion to shift the burden of proof to the Government on this issue.

Assuming, arguendo, that Appellant produced some evidence that unlawful command influence had the potential to impact the trial proceedings, we find beyond a reasonable doubt that this judge alone case was not impacted by actual or apparent unlawful command influence. An objective, disinterested member of the public, fully informed of all facts and circumstances, would not harbor a significant doubt as to the fairness of Appellant's trial. *See United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).

*Sentence Appropriateness*

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 148 (C.A.A.F. 2010).

After giving individualized consideration to this particular Appellant, her relatively brief record of service, the nature and seriousness of the offense, and all other matters contained in the record of trial, we decline to grant Appellant the relief she requests before this court. The approved sentence for Appellant's repeated use of an illegal drug is not unduly harsh or otherwise inappropriate in our opinion.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist